**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNA SCARNECCIA-PIE, | : |
| | : Civil Action No. |
| Plaintiff, | : |
| | : **COMPLAINT** |
| v. | : |
| | : JURY TRIAL DEMANDED |
| MOSS REHAB/EINSTEIN AT ELKINS PARK, | : |
| MOSS REHABILITATION CENTER | : |
| EINSTEIN HEALTHCARE SYSTEMS, INC., | : |
| EINSTEIN MEDICAL CENTER ELKINS PARK, | : |
| AMY WILSON, | : |
| KAREN DONOHUE-BARRETT, | : |
| SHARI GOODMAN, *and* | : |
| RACHELLE RIGOUS, | : |
| | : |
| Defendants. | : |

## NATURE OF THE ACTION

1. This is an action for relief from violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA") and the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA").

2. Plaintiff is seeking damages to redress the injuries that she has suffered as a result of being discriminated and retaliated against by Defendants, her employers, on the basis of her sex, disability and participation in protected activity.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions of federal law under Title VII, the ADA and the FMLA.

4. This Court has personal jurisdiction over Defendants because their principal place of business or residence is here, Defendants regularly provide services to persons here, Defendants regularly conduct business here, Defendants employed Plaintiff to work here, and Defendants otherwise established contacts here sufficient to permit the exercise of personal jurisdiction.

5. Venue is proper under 28 U.S.C. 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to Plaintiff's Title VII, the ADA and the FMLA claims took place here.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER TITLE VII AND ADA

6. Plaintiff timely filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Philadelphia Commission on Human Relations Commission ("PCHR") alleging violations of Title VII, the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"), and the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1101 et seq. ("PFPO").

7. Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

8. Plaintiff's PHRA and PFPO claims are still pending before PCHR because less than one year has elapsed since PCHR assumed jurisdiction over her charges. When Plaintiff's claims are ripe, Plaintiff will seek leave amend this complaint to assert her PHRA and PFPO claims against Defendants. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the

original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## PARTIES

9.  Plaintiff Anna Scarneccia-Pie is an adult individual residing at 134 Mt. Carmel Avenue, Glenside, PA 19038.

10. Defendant Moss Rehab/Einstein at Elkins Park is a fictitious business entity incorporated in Pennsylvania with a principal place of business located at 60 Township Line Rd, Elkins Park, PA 19027.

11. Defendant Moss Rehabilitation Center is a fictitious business entity incorporated in Pennsylvania with a principal place of business located at 12th & Tabor Road, Philadelphia, PA 19141.

12. Defendant Einstein Healthcare Systems, Inc. is a fictitious business entity incorporated in Pennsylvania with a principal place of business located at 5501 Old York Road, Philadelphia, PA 19141.

13. Defendant Einstein Medical Center Elkins Park is a fictitious business entity incorporated in Pennsylvania with a principal place of business located at 5501 Old York Road, Philadelphia, PA 19141.

14. Defendant Amy Wilson is an adult individual residing in Pennsylvania with a principal place of business located at 60 Township Line Rd, Elkins Park, PA 19027.

15. Defendant Karen Donohue-Barrett is an adult individual residing in Pennsylvania with a principal place of business located at 5501 Old York Road, Philadelphia, PA 19141.

16. Defendant Shari Goodman is an adult individual residing in Pennsylvania with a principal place of business located at 60 Township Line Rd, Elkins Park, PA 19027.

17. Defendant Rachelle Rigous is an adult individual residing in Pennsylvania with a principal place of business located at 60 Township Line Rd, Elkins Park, PA 19027.

18. Defendants are collectively doing business as "MossRehab at Center City," a medical facility located at 12 S. 23rd Street, Philadelphia, Pennsylvania 19103.

19. Defendant Wilson is and was at all relevant times employed as a Human Resources Representative.

20. Defendant Donohue-Barrett is and was at all relevant times employed as a Human Resources Leave Coordinator.

21. Defendant Goodman is and was at all relevant times employed as a Clinical Nurse Manager.

22. Defendant Rigous is and was at all relevant times employed as a Clinical Nurse Manager.

23. At all relevant times, Defendants Wilson, Donohue-Barrett, Goodman and Rigous had supervisory authority over Plaintiff.

24. Defendants collectively exercise sufficient control over the labor policies and practices complained of herein to be considered the employers of Plaintiff for the purposes of Title VII, the ADA and the FMLA.

## FACTS

25. Plaintiff started working for Defendants on approximately October 2, 2016, when she was hired as a registered nurse assigned to Defendants' Spinal Cord Unit.

26. In or around the end of 2016, Plaintiff became aware that she was pregnant with her first child.

4

27. In or around the summer of 2017, Plaintiff returned from maternity leave which was preapproved by Defendants.

28. Upon return to work from maternity leave, Defendants drastically changed Plaintiff's work assignment and schedule, transitioning Plaintiff to part-time 12-hour nightshifts exclusively.

29. Unlike Plaintiff's similarly situated coworkers who were not pregnant and had not taken maternity leave, Plaintiff was not allotted a "trial period" to test the new schedule.

30. Plaintiff became aware that her hours were the only ones effected, as she was the only employees moved to part-time scheduling. Plaintiff felt dissatisfied with her new work schedule but feared reprisal, so she agreed to work the adjusted schedule.

31. In or around July 2018, Plaintiff woke-up sick and nauseous on the day of her evening shift. Plaintiff immediately notified Defendant Rigous that Plaintiff would be taking personal time off to schedule a visit with her doctor.

32. Plaintiff's doctor informed her that she was pregnant with her second child.

33. Upon returning to work for her next shift, Plaintiff informed Defendants that she was pregnant.

34. On or around July 11, 2018, Plaintiff began experiencing stomach cramping and vaginal bleeding. Plaintiff made an appointment with her doctor.

35. Plaintiff's doctor cleared her to return to work, but her doctor was concerned by her symptoms and placed Mrs. Pie on restricted duty. Plaintiff was instructed to avoid heavy lifting (over 10 pounds) and avoid prolonged standing and excessive heat.

36. On or around July 12, 2018, Plaintiff informed Defendants that she was pregnant with her second child and requested reasonable accommodations pursuant to her doctor's instructions.

37. Plaintiff informed Defendants that the restrictions were being implemented because of complications surrounding her pregnancy and specifically described her symptoms giving rise to her doctor's recommendations.

38. Rather than provide Plaintiff with the reasonable accommodations she requested, Defendants insisted Plaintiff take personal time off and/or seek FMLA leave.

39. Defendants removed Plaintiff from the work schedule effectively cutting off Plaintiff's income.

40. On or around July 18, 2018, Defendants contacted Plaintiff via email stating that they had received her request for "Consecutive FMLA Leave" and incorrectly stated that Plaintiff was ineligible for FMLA leave. Defendants also provided Plaintiff with personal leave paperwork to be completed and returned to Defendants.

41. On or around July 26, 2018, Plaintiff submitted her personal leave paperwork. Plaintiff also stated her need for a reasonable accommodation regarding her high-risk pregnancy.

42. On or around August 2, 2018, Plaintiff asked to meet with Defendants Rigous and Goodman to discuss her return to work, including the restrictions implemented by her doctor and request for a reasonable accommodation.

43. At the outset of the meeting, Defendants questioned Plaintiff "for getting pregnant again so soon after her first pregnancy." During this conversation, Defendants made it overtly clear that Plaintiff's job was at risk.

44. Defendants Wilson and Barrett notified Plaintiff that her pregnancy was an inconvenience to Defendants and that Plaintiff "would have a difficult time fitting in with the schedule when she returned from maternity leave."

45. Plaintiff suggested asking her doctor to adjust her restrictions, or in the alternative, asked whether she could transfer to one of Defendants' other facilities to accommodate her pregnancy.

46. Defendants informed Plaintiff that she was "not able to work light duty because she was not injured on the job" and that would only be permitted to work with "100 percent clearance" from her doctor.

47. Defendants refused to engage in the interactive process surrounding Plaintiff's requests for a reasonable accommodation.

48. On or around August 13, 2018, fearful that she was going to be terminated, Plaintiff returned to her doctor and requested to have her pregnancy accommodations lifted so she could return to work. Plaintiff's doctor denied her request.

49. Immediately following Plaintiff's August 13, 2018 appointment, Plaintiff followed up with Defendant Wilson and provided an update about being unable to get her restrictions lifted. Defendants did not respond.

50. Approximately 1.5 weeks later, having received no response from Defendants, Plaintiff again followed up with her doctor requesting that her restrictions be lifted.

51. On or around September 3, 2018, Plaintiff's doctor agreed to lift her restrictions.

52. Plaintiff immediately informed Defendants of her availability to work without restrictions. In an effort to ensure all protocols were followed, Plaintiff asked that she

receive final approval from Defendants' Human Resources department to confirm that she would be permitted to return to work. Defendant Wilson stated, "I'll get back to you."

53. On or around September 6, 2018, Plaintiff received a letter from Respondent Barrett confirming that Plaintiff had been approved for a "Personal Leave of Absence" beginning on July 5, 2018 and continuing through "September 5, 2018 (or your first scheduled shift after 09/04/2018)."

54. On or around September 10, 2018, Defendant Rigous called Plaintiff and demanded to know "why she did not report to work the weekend prior." Plaintiff responded that she was never informed that she was put back on the work schedule.

55. Immediately following the phone call, Plaintiff called Defendants' nursing staff office and confirmed that she was not scheduled to work on September 8, 2018 nor September 9, 2018. Plaintiff then proceeded to call Defendant Wilson and confirmed same.

56. On or around September 11, 2018, Plaintiff met with Defendants' management team to discuss her return to work schedule. Defendants confirmed that Plaintiff was scheduled to return to work on September 25, 2018.

57. On or around September 25, 2018, Defendants called Plaintiff for a meeting to discuss her "job status."

58. On or around September 26, 2018, Defendants unlawfully terminated Plaintiff's employment because of her pregnancy, her requests for reasonable accommodation and in retaliation for opposing Defendants' unlawful conduct.

59. When Plaintiff attempted to return from leave, Defendants failed to restore Plaintiff to the same job that she held when her leave began or to an equivalent job.

60. Defendants interfered with, restrained and/or denied Plaintiff's exercise (or the attempt to exercise) her FMLA rights.

61. Defendants improperly refused to authorize Plaintiff's FMLA leave.

62. Defendants improperly discouraged Plaintiff from using FMLA leave.

63. Defendants failed to give Plaintiff a timely Eligibility Notice within five days of the date Defendants learned that Plaintiff's leave may be for an FMLA-qualifying reason

64. Upon learning that Plaintiff's medical condition qualified for FMLA leave, Defendants failed to make an eligibility determination.

65. Defendants also failed to give Plaintiff a timely Rights and Responsibilities notice in writing.

66. Defendants failed to respond to Plaintiff's numerous inquiries concerning her rights and responsibilities under the FMLA.

67. Defendants failed to timely notify Plaintiff that a medical certification was required concerning Plaintiff's need for FMLA leave.

68. When Plaintiff made a diligent, good faith effort to timely provide a medical certification, Defendants failed to give Plaintiff additional time to provide the certification and/or otherwise failed to engage in the interactive process.

69. Plaintiff provided a complete and sufficient medical certification that Defendants failed to accept.

70. Defendants improperly used Plaintiff's taking of FMLA leave as a deciding factor in disciplining and firing Plaintiff.

71. Defendants improperly counted Plaintiff's FMLA leave under its "no fault" attendance policy.

72. Defendants failed to provide benefits to Plaintiff on unpaid FMLA leave.

73. Defendants discriminated against Plaintiff for opposing or complaining about Defendants' unlawful practices under the FMLA.

74. Defendants failed to make, keep and preserve the requisite records under the FMLA, including but not limited to, Plaintiff's medical records concerning her request for FMLA leave; copies of FMLA notices provided to Plaintiff; and/or records of any dispute between Defendants and Plaintiff regarding the designation of leave as FLMA.

75. Defendants discriminated against Plaintiff in the terms and conditions of her employment because of Plaintiff's sex, disability and participation in protected activity.

76. Defendants retaliated against Plaintiff because she reported or otherwise opposed Defendants' illegal conduct.

77. Defendants subjected Plaintiff to a hostile work environment based on sex, disability and retaliation.

78. Plaintiff claims a continuing practice of discrimination and makes all claims herein under the continuing violations doctrine.

79. Plaintiff claims unlawful constructive and/or unlawful actual discharge and also seeks reinstatement of her position, benefits and seniority

80. Plaintiff claims aggravation, activation and/or exacerbation of any preexisting condition.

81. The above are just some examples of the unlawful and discriminatory conduct and retaliation to which Defendants subjected Plaintiff.

82. Because Defendants' conduct had been malicious, willful, extreme and outrageous, and conducted with full knowledge of the law, Plaintiff respectfully seeks all available damages, including but not limited to, emotional distress damages, lost wages, back pay,

front pay, statutory damages, liquidated damages, reinstatement, attorneys' fees, costs, interest and punitive damages from all Defendants, jointly and severally.

**COUNT I**
**VIOLATIONS OF THE FMLA**
**29 U.S.C. §§ 2601 et seq.**

83. Plaintiff incorporates by reference the allegations contained in all previous paragraphs as if fully set forth at length herein.

84. The FMLA provides eligible employees of covered employers with up to 12 workweeks of unpaid, job protected leave in a 12-month period for, *inter alia*, a serious health condition that makes the employee unable to perform the essential functions of her job. 29 U.S.C. §§ 2601 et seq.

85. A covered employer must provide FMLA benefits and protections to eligible employees and comply with other responsibilities under the FMLA and its regulations at 29 C.F.R. Part 825.

86. At all relevant times, Plaintiff was an eligible employee of a covered employer with a qualifying medical condition entitling her to the protections of the FMLA.

87. Defendants violated the FMLA by interfering with, restraining and/or denying Plaintiff's rights under the FMLA by, *inter alia*:

    a.  Failing to comply with the general notice requirements under the FMLA;

    b.  Failing to comply with the eligibility notice requirements under the FMLA;

    c.  Failing to comply with the rights and responsibilities notice requirements under the FMLA;

    d.  Failing to comply with the designation notice requirements under the FMLA;

    e.  Failing to provide notice of a fitness-for-duty certification with the designation notice as required by the FMLA;

    f.   Failing to continue to contribute to Plaintiff's health benefits while she was placed on involuntary medical leave;

    g.  Discharging and/or constructively discharging, suspending and/or disciplining Plaintiff notwithstanding that Plaintiff was fit to perform her duties and return to work at the end of her FMLA leave;

    h.  Retaliating against Plaintiff for asking for attempting to exercise her rights under the FMLA;

    i.   Failing to provide Plaintiff with the proper FMLA forms and/or medical certifications;

    j.   Failing to supervise and/or train its employees and supervisors on compliance with the provisions of the FMLA;

    k.  Failing to have in place proper FMLA policies, procedures and compliance; and/or

    l.   Otherwise violating the FMLA.

88. Defendants' violations of the FMLA were grossly negligent and/or willful.

89. As a direct and proximate cause of Defendants' willful violations of the FMLA, Defendants are liable for Plaintiff's compensation and benefits lost by reason of the violations, for other actual monetary losses sustained as a direct result of their violations, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiff. See 29 CFR 825.300 (e).

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with the FMLA; (2) an award of reasonable attorneys' fees and costs of this action in accordance with the FMLA; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an award of liquidated damages in accordance with the FMLA; (5) an adjudication and declaration that the City's conduct as set forth herein is in violation of the FMLA; and (6) all additional general and equitable relief to which Plaintiff is entitled.

12

## COUNT II
## ADA DISABILITY DISCRIMINATION
## 42 U.S.C. §§ 12101 et seq.

90. Plaintiff repeats and realleges every allegation made in the above paragraphs of this complaint.

91. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

92. Under the McDonnell Douglas burden-shifting analysis, Plaintiff must establish a *prima facie* case for discrimination, namely that she (1) has a disability, (2) is a qualified individual, and (3) has suffered and adverse employment action (4) under circumstances giving rise to an inference of discrimination. Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006).

93. Furthermore, it is well-settled law that, under the ADA, employers have an obligation to provide a reasonable accommodation for a disabled employee and that the failure to provide a reasonable accommodation to an employee's known disability is a form of discrimination. 42 U.S.C. § 12112(b)(5)(A).

94. It is undisputed that (1) Plaintiff's pregnancy diagnosis qualifies as a disability; (2) Plaintiff's experience and performance establish she was qualified; and (3) Plaintiff was terminated (4) a short time after requesting a reasonable accommodation related to her pregnancy diagnosis.

13

95. Defendants cannot show a legitimate nondiscriminatory reason for their actions and any reasons proffered by Defendants for terminating Plaintiff's employment are pretextual and can readily be disbelieved.

96. Defendants engaged in an unlawful discriminatory practice by discriminating and retaliating against Plaintiff because of her disability and refusing to provide Plaintiff with a reasonable accommodation.

97. Because of Defendants' violation of the ADA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunity; harm to her business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

### COUNT III
### TITLE VII DISPARATE TREATMENT
### 42 U.S.C. § 2000e-2

98. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

99. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

14

100.     Title VII further provides that "un unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

101.     Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions, training and privileges of employment because of her sex.

102.     Defendants subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

103.     Plaintiff's protected characteristics (sex) played a determinative factor in Defendants' decisions.

104.     Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

105.     Alternatively, Plaintiff' protected status played a motivating part in Defendants' decisions even if other factors may also have motivated their actions against Plaintiff.

106.     Defendants acted with the intent to discriminate.

107.     Defendants acted upon a continuing course of conduct.

108.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT IV**
**TITLE VII HOSTILE WORK ENVIRONMENT**
**42 U.S.C. § 2000e-2**

109.     Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

110.     Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

111.     An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

112.     Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

113.    Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

114.    The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

115.    Here, Defendants' conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

116.    The harassing conduct directly refers to Plaintiff's sex.

117.    Defendants delegated to Plaintiff's supervisors the authority to control the work environment and they abused that authority to create a hostile work environment.

118.    Harassing conduct filled the environment of Plaintiff's work area.

119.    Defendants knew that the harassing conduct filled Plaintiff's work environment.

120.    Harassing conduct occurred daily.

121.    Harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness and serious psychological sequelae.

122.    Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

123.    The conduct was both severe and pervasive.

124.    The conduct was physically threatening and humiliating.

125.    The conduct unreasonably interfered with Plaintiff's work performance.

126.     The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

127.     Defendants provided a futile avenue for complaint.

128.     Defendants retaliated against Plaintiff for her complaints.

129.     Defendants acted upon a continuing course of conduct.

130.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT V**
**TITLE VII RETALIATION**
**42 U.S.C. § 2000e-3**

131.     Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

132.     Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

42 U.S.C. § 2000e-3. Other unlawful employment practices

18

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

133.    The Supreme Court in Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68

(2006) held that a cause of action for retaliation under Title VII lies whenever the

employer responds to protected activity in such a way that "might have dissuaded a

reasonable worker from making or supporting a charge of discrimination."

134.    Informal complaints and protests can constitute protected activity under the

"opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d

331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal

protests of discriminatory employment practices, including making complaints to

management.").

135.    Title VII's anti-retaliation provision also protects employees who speak out about

discrimination by answering questions during an employer's internal investigation.

Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee, 555 U.S.

271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by

responding to someone else's question just as surely as by provoking the discussion, and

nothing in the statute requires a freakish rule protecting an employee who reports

discrimination on her own initiative but not one who reports the same discrimination in

the same words when her boss asks a question.").

136.    Retaliation need not be job-related to be actionable under Title VII—an employer

can effectively retaliate against an employee by taking actions not directly related to her

employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62

(rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an

adverse employment action in order to recover for retaliation).

137.    "[A] plaintiff need not prove the merits of the underlying discrimination

complaint, but only that '[she] was acting under a good faith, reasonable belief that a

violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir.

1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United

States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by

Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

138.    An employee need not be a member of a protected class to be subject to

actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's

whistleblower protection is not limited to those who blow the whistle on their own

mistreatment or on the mistreatment of their own race, sex, or other protected class.")

139.    Here, Defendants discriminated against Plaintiff because of her protected activity

under Title VII.

140.    Plaintiff was acting under a reasonable, good faith belief that her right to be free

from discrimination on the basis of sex was violated.

141.    Plaintiff was subjected to materially adverse actions at the time or after the

protected conduct took place.

142.    There was a causal connection between Defendants' materially adverse actions

and Plaintiff's protected activity.

143.    Defendants' actions were "materially adverse" because they were serious enough

to discourage a reasonable worker from engaging in protected activity.

144.    Defendants acted upon a continuing course of conduct.

145.    Plaintiff will rely on a broad array of evidence to demonstrate a causal link

between her protected activity and Defendants' actions taken against her, such as the

unusually-suggestive proximity in time between events, as well as Defendants'

antagonism and change in demeanor toward Plaintiff after Defendants became aware of

Plaintiff's protected activity.

146.    As a result of Defendants' violations of Title VII, Plaintiff has suffered damages,

including, but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following

relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an

award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an

award of pre- and post-judgment interest and court costs as further allowed by law; (4) an

adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title

VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be

determined at the time of trial plus interest, including, but not limited to, reinstatement, back pay

and front pay, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

By: _____

IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff*

Dated: <u>September 3, 2019</u>

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Anna Scarneccia-Pie

**(b)** County of Residence of First Listed Plaintiff  Montgomery County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Derek Smith Law Group, PLLC
1835 Market St, suite 2950, Philadelphia, PA 19103
215-391-4790

## DEFENDANTS
Moss Rehab/Einstein at Elkins Park, et.al.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC §§ 2000e et seq; 42 USC §§ 12101 et seq; 29 USC §§ 2601 et seq.

Brief description of cause:
Sex and disability discrimination in employment

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  September 5, 2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Anna Scarneccia-Pie                          :                    CIVIL ACTION

                                    v.        :

Moss Rehab/Einstein at Elkins Park;           :                    NO.
et al.                                        :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            (X)

09/03/2019            Ian M. Bryson, Esq.            Plaintiff
**Date**                **Attorney-at-law**            **Attorney for**

215-391-4790          215-893-5288          ian@dereksmithlaw.com

**Telephone**            **FAX Number**            **E-Mail Address**

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: *134 Mt. Carmel Ave, Glenside, PA 19038*

Address of Defendant: *60 Township Line Rd, Elkins Park, PA 19027*

Place of Accident, Incident or Transaction: *Philadelphia, PA*

---

**RELATED CASE, IF ANY:**

Case Number: *N/A*     Judge: *N/A*     Date Terminated: *N/A*

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐     No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐     No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?     Yes ☐     No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐     No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: *09/03/2019*     _____     *321359*
                              Must sign here
                              *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.     Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☒ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
         *(Please specify): _____*

**B.     Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify): _____*
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
         *(Please specify): _____*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, *Ian M. Bryson, Esq.*, counsel of record *or pro se plaintiff*, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: *09/03/2019*     _____     *321359*
                              Sign here if applicable
                              *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)